```
                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION


LONGLEAF   MITIGATION    DEVELOPMENT
COMPANY,  LLC,  a  Florida   limited
liability company,

                    Plaintiff,

v.                                      Case No. 3:07-cv-180-J-33HTS

FLORIDA MITIGATION PROVIDERS, LLC, a
Florida  limited  liability  company,
and LOBLOLLY   MITIGATION   PRESERVE,
LLC,  a  Florida  limited   liability
company,

                    Defendant.
_____/
```

**ORDER**

This cause comes before the Court pursuant to Defendant, Florida Mitigation Providers, LLC's Motion to Dismiss Complaint (Doc. # 8), filed on April 30, 2007. Longleaf filed a response on May 18, 2007. (Doc. # 12.) Florida Mitigation Providers (FMG) argues that it must be dismissed from this action because Longleaf's complaint does not allege that FMP engaged in any wrongful conduct. According to FMP, Longleaf's complaint is directed solely at FMP's co-defendant, Loblolly. Because the complaint adequately states a claim against FMP, the motion to dismiss must be denied.

**I.   Background**

According to the complaint, Longleaf and Loblolly both sell wetland mitigation credits (Doc. # 1, at 3, 4), and FMP manages

Loblolly (Doc. # 1, at 4). Real estate developers require wetland mitigation credits when their developments would have an impact on wetlands. (Doc. # 1, at 2.) The credits allow a real estate developer to offset the impact of a development, as required by environmental regulatory authorities. (Doc. # 1, at 2.)

Longleaf's credits are valuable for mitigating wetland impacts only in specific geographic areas approved by the regulatory authorities. (Doc. # 1, at 3.) One such area where Longleaf's credits can be used is known as the Duval County portion of Basin Four (DCPBF). (Doc. # 1, at 4.) The regulatory authorities have determined that Longleaf's credits can only be used to offset a portion of a development's impact within the DCPBF. (Doc. # 1, at 4.) In other words, a developer wishing to offset a development's impact within the DCPBF cannot purchase all the needed credits from Longleaf. Instead, the developer would need to purchase some credits from another seller. The only other seller of credits for the DCPBF is Loblolly. (Doc. # 1, at 4.) "Unlike Longleaf, however, Loblolly can supply 100% of a development's mitigation credit needs in the Duval County Portion of Basin 4." (Doc. # 1, at 4.)

Longleaf complains that Loblolly took advantage of this situation to tie the purchase of <u>any</u> needed credits in the DCPBF to the purchase of <u>all</u> needed credits in the DCPBF. (Doc. # 1, at 5.) In one case, a particular customer had negotiated to purchase

2

approximately $2.7 million of credits from Longleaf. (Doc. # 1, at 5.) Because the customer was located in the DCPBF, the customer was required also to purchase credits from Loblolly. (Doc. # 1, at 5.) Loblolly refused to sell any credits to the customer at any price unless the customer agreed to buy all its credits from Loblolly. (Doc. # 1, at 5.) Thus, the customer backed out of its purchase from Longleaf. (Doc. # 1, at 5-6.)

Subsequently, Loblolly changed its standard pricing structure. (Doc. # 1, at 6.) A developer buying all its credits from Loblolly can buy the credits for $50,000 per credit. (Doc. # 1, at 6.) Loblolly charges $70,000 per credit, though, for customers who buy some credits from a seller other than Loblolly. (Doc. # 1, at 6.) Longleaf alleges that there is no justification for this pricing structure other than eliminating price competition from Longleaf. (Doc. # 1, at 6.)

Longleaf filed this complaint on March 16, 2007, charging four counts. Count One alleges a violation of the Sherman Act, 15 U.S.C. § 1, et seq. (Doc. # 1, at 8.) The remaining three counts allege unfair competition under Florida state law. (Doc. # 1, at 10-12.)

FMP filed its motion to dismiss on April 30, 2007. FMP argues the complaint should be dismissed against FMP because it contains no allegations against FMP. (Doc. # 8, at 2.) FMP acknowledges that the complaint alleges FMP manages and partially owns Loblolly.

(Doc. # 8, at 2.) It argues, though, that management and partial ownership is not enough for liability to attach. (Doc. # 8, at 4.) FMP posits that the only way for liability to attach in this situation is for Loblolly's corporate veil to be pierced. (Doc. # 8, at 5.)

Longleaf relies on the allegation that FMP manages Loblolly. (Doc. # 12, at 1.) Longleaf contends that this means "Loblolly's activities are conducted by FMP." (Doc. # 12, at 1.) Longleaf submits, "There is nothing remarkable about the proposition that a person or entity who actually engages in wrongful conduct, albeit in the name of and for purposes of another, is himself (or itself) liable for the misconduct." (Doc. # 12, at 2.)

**II. Standard of Decision**

On a motion to dismiss, a district court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). A court must favor the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). The complaint may not be dismissed if the factual allegations, taken as true, suffice to "raise a right to relief above the speculative level." Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955, 1964-65 (2007) (concluding that complaint need not state "detailed factual allegations" but must state sufficient factual allegations to raise right to relief above speculative level). Thus, a complaint may be dismissed only if all the factual allegations, taken as true and construed in the light most favorable to the plaintiff, fail to raise a right to relief above the speculative level.

Applying this standard, the Court must decide whether there is a right to relief against an entity that manages or conducts another entity's wrongdoing. Then, the Court must decide whether the following two allegations are sufficient to allege that the manager has directed the entity's wrongdoing: (1) the manager manages the entity; and (2) the entity has engaged in wrongdoing. The Court must decide whether these allegations raise the right to relief above mere speculation.

**III. Discussion**

One who causes another to violate the antitrust laws can be liable for the violation. See Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1459 (11th Cir. 1991). In Todorov, the Eleventh Circuit addressed the complaint of a physician who was denied the privilege of performing a certain radiological procedure at a hospital. Id. at 1441. Perhaps to retain their ability to charge higher fees, a group of radiologists recommended that the physician be denied that privilege. Id. at 1457-58. The hospital denied the privilege.

Id. at 1457.  In this situation, the Eleventh Circuit determined that the group of radiologists could not be liable because the physician could not show that the group caused the hospital's decision to deny the privilege.  Id. at 1459; id. at 1462.  "[T]he radiologists, regardless of their desires, were not causally responsible for this decision."  Id.  By founding its decision on this finding, the Eleventh Circuit implicitly recognized that the radiologists could have been liable had they been causally responsible for the denial of the privilege.  Thus, one can be liable for an antitrust violation where one causes an entity to commit the violation.

In Brown v. Donco Enterprises, Inc., the Sixth Circuit explained what it meant for one to cause an entity to violate the antitrust laws.  783 F.2d 644, 646 (6th Cir. 1986).  The court opined that a law firm could be liable for its client's antitrust violations if the law firm "becomes an active participant in formulating policy decisions with [its] client to restrain competition."  Id.  In the instant case also, FMG will be liable for any antitrust violations committed by Loblolly if FMG was an active participant in formulating policy decisions to undertake such unlawful restraint of competition.  If Loblolly committed an antitrust violation, Loblolly will be liable.  FMG will also be liable if it actively participated in the policy decision to commit the violation.

6

FMG argues that it could only be liable if Loblolly's corporate veil were pierced. (Doc. # 8, at 5.) This is incorrect. FMG can also be liable if it directly engaged in wrongdoing. See Special Purpose Accounts Receivable Coop. v. Canadian Imperial Bank of Commerce, 125 F. Supp. 2d 1093, 1104-05 (S.D. Fla. 2000) (explaining that there is no need to pierce the corporate veil because officer, director, or agent of corporation is directly liable for torts in which he personally participates "whether or not his actions are by authority of the corporation or in furtherance of the corporate business . . . [and] regardless of whether liability attaches to the corporation for the tort). It is clear that Longleaf seeks to proceed under the theory that FMG directly engaged in wrongdoing. (See Doc. # 12.)

The question, now, is whether Longleaf has sufficiently alleged that FMG has directly engaged in wrongdoing -- specifically, violation of the antitrust laws and commission of related unfair competition torts -- through its management of Loblolly. Longleaf's complaint alleges that FMG manages Loblolly. (Doc. # 1, at 4.)  The complaint then states numerous detailed allegations of actions taken by Loblolly. (Doc. # 1.)  Favoring Longleaf with all reasonable inferences from the allegations that FMG manages Loblolly and that Loblolly has engaged in wrongdoing, the Court concludes that Longleaf has sufficiently stated a claim that FMG has directly participated in wrongdoing. It is reasonable

to infer from these allegations that FMG, as manager of Loblolly, actively participated in the policy decisions of Loblolly, including any decision to unlawfully restrain competition.  If that is true, FMG would be directly liable for its own role in the wrongdoing.  Thus, Longleaf has stated a claim against FMG.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant, Florida Mitigation Providers, LLC's Motion to Dismiss Complaint (Doc. # 8) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 8th day of October 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record